ROBERTSON, Ex'r., etc., *v.* WILBURN *et als.*

1. MARRIED WOMAN.  *Cannot bind herself as security.*  A married woman cannot ordinarily bind herself by signing a note as security.

2. SAME.  *Separate property.*  In the absence of power conferred by the instrument, she cannot make liable, for her husband's debt, a legacy given to her trustee for her sole and separate use for life, and at her death to her children.

3. *Chancery Court.  Decrees.  When void.*  A court of chancery cannot pass a decree upon matters not presented by the pleadings so as to bind the parties, much less has it jurisdiction to effect the interest of persons not parties to a contract by a rescission of that contract, such decree is void.

4. *Married Woman.  How to charge her separate property.*  If a wife undertake in court to charge her separate estate, having the power so to do, the required form of proceeding in such cases must be observed.

FROM WILSON.

Appeal from the Chancery Court at Lebanon.    J. E. BAILEY, Sp. J.

TARVER & GOLLIDAY for complainant.

JORDAN STOKES, Sen., for defendants.

TURNEY, J., delivered the opinion of the court.

Samuel Justice died in 1864.  He left a will, by which he directed a sale of his real and personal property, the proceeds to be equally divided amongst his children.  By the sixth clause of the will he directs "that Lucinda Wilburn's share of my estate shall be vested in the hands of my executor to purchase a

negro girl or girls, as the case may be, such as her money will purchase, said negroes to be her property to her separate use for and during her natural life, and after her death to be divided between all her children."

Complainant, L. W. Robertson, was appointed executor, and immediately entered upon the duties. He sold the land and such personal property as he could. On the 5th of September, 1865, he filed his bill asking a construction of the will, to be relieved from liability because of the impossibility at the time and under the circumstances to make purchase, etc., of slaves as directed. He asks the court to indicate by decree what disposition he shall make of the share of Lucinda Wilburn in the estate of her father, "which will, after the payment of expenses, amount to $1,500 or $1,600, or more." This amount was in part constituted of the proceeds of the land sale made November 30, 1864. An answer in the name of W. P .Wilburn and wife was filed. This answer is sworn to and subscribed alone by the husband, and is filed as a cross-bill, asking a settlement of the estate on account of advancements, etc., making the executor and distributees parties. As a cross-bill, it charges that "respondent, W. P. Wilburn, became the purchaser of the land, *he being* desirous to secure a home for his wife and children, *he* bought the whole two hundred and seventy acres at $20 per acre, and has since sold one hundred and seventy acres, reserving one hundred acres as a home for *himself*, wife, and children. By the consent of the executor and the purchasers they

executed their notes to him (the executor), and this. *respondent executed* his *notes to the executor.*" They (meaning himself and the executor and purchasers) made this arrangement believing respondent's (Lucinda's) interest or distributive share in her father's estate would amount to that much." Robertson answers and says he sold the home tract to complainant, Wilburn, as charged in the bill.

The executor made his report of sale, in which he says: "According to the will of said deceased, I advertised and sold his tract of land on a credit of one and two years. W. P. Wilburn bid in the whole tract at $20 per acre. He then gave his notes for one hundred acres of said land, with R. S. Wilburn, his wife Lucinda Wilburn, and R. S. Liggon, securities."

At the April Term, 1870, the clerk and master made a report that "the executor had sold one hundred acres of the land to W. P. Wilburn."

At the October Term, 1865, the court decreed "that the investment of the fund given to Lucinda Wilburn in said sixth clause in said slave or slaves, as contemplated in said clause, is now entirely impracticable, and it appearing from the answer of said Lucinda in this case, that her husband, Womack Wilburn, had purchased one hundred acres of land with a view of making it a permanent home for the said Lucinda and her children, it is, therefore, directed that she appear in open court at the next term to be examined touching her desire as to said investment of said legacy in the land above referred to."

Of this order Mrs. Wilburn had no notice until the April Term, 1870.

At the April Term, 1868, a decree is made in the following language: "And it further appearing to the court that by the sixth clause of said will the executor is directed and ordered to invest the share of Lucinda Wilburn, daughter of the testator, in slaves, and it appearing that such property no longer exists, and that it is impossible to execute said provision, and the said Lucinda being in court and asking that her legacy or fund shall be invested in land to her separate use for and during her natural life, and after her death to be divided between all of her children, and the court being of opinion that such would be a safe investment of the fund and legacy of said Lucinda Wilburn, given by the will, doth see fit to order and decree that the executor shall so invest the funds of said Lucinda, and the title will be declared and made so as to secure it to her sole and separate use for life, and after her death to be divided between her children as the will directs." By the same decree it is ordered, "the executor shall state and settle his accounts, and make his final settlement in this court for confirmation or rejection."

The decree, no further than already indicated, gives direction or order as to the interest of Mrs. Wilburn, except to order the payment out of it of her solicitors fees. In the report ordered by this decree and made to the April Term, 1870, the master charges W. P. Wilburn alone as the purchaser of the one hundred acres of land, never once alluding to Mrs.

Wilburn as a purchaser, but including the proceeds of the sale of the one hundred acres, reports the amount due to Mrs. Wilburn from the executor. As often as twice, at least, in this report, Wilburn is men-tioned as the purchaser without reference to his wife. The exception to it by Robertson is in this language: "The executor excepts to the report allowing the interest of W. P. Wilburn and wife's interest as due. This share should be deducted from the notes of Wilburn and wife with Liggon as security, and the account should report the balance due and owing by Wilburn and wife, as Mrs. Wilburn has pledged and bound her separate estate, and the report should be so made as to give executor Robertson a judgment on the note, and for balance subject the land purchased by them to payment, as the parties are all before the court."

Yet, notwithstanding there was no reference as to the share of Lucinda Wilburn, no recital that she was a purchaser, and nothing in the report upon the subject other than the fact of purchase by Wilburn alone, and notwithstanding the answer and cross-bill show the purchase to have been by Wilburn, yet the decree upon the report and exception cited adjudges that the one hundred acres of land was sold to Wilburn and wife, and recites: "And it further appearing at this term of the court that the said Lucinda had appeared in open court and expressed her wish to have her separate estate under the will of her father paid over in money to her husband, and desires to be relieved of the land purchase, and the executor consenting to

rescission of the sale provided he can be made sound and safe, and fully indemnified for all losses out of the separate estate of the said Lucinda Wilburn, and out of the said Womack P. Wilburn, which may arise from a resale of the land, and the court being further of opinion that the executor was not at any fault in the discharge of his duties as executor in making the arrangement with the said W. P. Wilburn and wife, Lucinda, for her accommodation and as her wish, whereby she bound her separate estate, and that the executor is entitled to protection as against W. P. Wilburn and wife, Lucinda, for any and all loss he may sustain by a resale of the land, it is therefore decreed," etc., setting aside the sale of the land, ordering indemnity to Robertson out of the separate estate of Mrs. Wilburn, giving him a writ of possession, recommitting the account as to the interest of Lucinda, etc., and concluding: "The foregoing decree shall not be deemed conclusive as to the liability of the parties, or the notes given to the executor by W. P. Wilburn and wife and Liggon, but the same may be inquired into on the coming in of master's report."

The recital in this decree that Mrs. Wilbourn "had appeared in open court and expressed her wish to have her separate estate paid over in money," etc., and a desire to be relieved of the land purchase, cannot, by reasonable construction, be made to mean that she thereby took upon herself any higher obligation than already rested upon her. The natural and certain relation of this course on the part of Mrs. Wilburn to the decree, that she appear and be examined

touching her desire as to the investment of her legacy in the one hundred acres of land, makes it certain that what she did was confined to a response to that order. The recital that she desired to be relieved of the land purchase, only evidences an asking by her to be relieved from such liability as she might have contracted by signing the note as security for her husband; for, as we have already seen, she bore no other relation to the land purchase, and as a consequence could be relieved of none other. Besides, it is clear from the language of the decree that the examination of Mrs. Wilburn as to desire, etc., and the expression of consent by the executor to a rescission of the sale were done on different days of the term. The language as to Mrs. Wilburn is in the past tense, "had appeared;" that as to the executor, in the present. But be these facts as they may, by what authority does the court make the rescission at all? It is nowhere asked for in the pleadings. The bills and cross-bills are for wholly different objects. Can a decree in no way, directly or indirectly, immediately or remotely, called for by the parties, or any of them, be made so as to bind the parties, and especially parties who are not, as admitted by all, parties to the same ordered to be rescinded, clearly not, to so hold would abolish the necessity for and use of pleadings. The decree nowhere intimates that Mrs. Wilburn consented to the rescission at all, or even knew of it, and particularly does it fail to show that she consented upon the terms suggested by the executor, charging her separate estate. Even if she had done so, there

is nothing in the record giving the court jurisdiction to pass the decree. There is not only an absence of pleading upon the subject, and an absence of reason for such decree and of fact upon which to base it, but an absence of the parties eventually entitled to the body of the fund, viz., the children of Mrs. Wilburn, as well as an absence of the proper formal process in a court to charge a separate estate, even if the power to charge it was possessed by the wife. Connecting these facts with the injury that must result to Mrs. Wilburn, we cannot torture the decree into such binding validity as to work so gross an injury to her as to deprive her of the interest on the five hundred dollars in the hands of the trustee appointed by the will of the father to save it from the waste of her husband, and at the instance of that trustee, upon mere motion, to appropriate it to the debt of the husband, and to the benefit of the trustee, thus rewarding his neglect of duty.

If the sale was rescinded so as to effect Mrs. Wilburn, the note for the purchase money would be rescinded. Why, then, in the conclusion of the decree, reserve the question of the liability of the makers? In this connection it is proper to state that on December 17, 1872, there was a decree on a report of the master, and exceptions thereto. By that decree the executor is charged with the entire amount of the proceeds of the land sale, including the land sold to W. P. Wilburn.

In the amended bill, filed October 20, 1873, which seeks to review the decree of 1870, no reference is

had to the decree of rescission as a decree for such purpose, nor is it in any way relied upon as binding upon or affecting Mrs. Wilburn. The appeal before us is from a decree pronounced· at the October Term, 1875, and a decree pronounced November 3, 1875. The decree of December, 1872, shows conclusively the understanding of the Chancellor and of all the· parties to have been that the whole question involving in any way the liability of Mrs. Wilburn, was purposely left an open one by the decree of 1870. At the April Term, 1873, the death of W. P. Wilburn was suggested and proven, and order made upon the executor to file an amended bill, bringing before the court the children of W. P. and Lucinda Wilburn, and the administrator of W. P. Wilburn. The amended bill was filed, as already stated, October 20, 1873, in which the executor charges that in the progress of the original cause, · " it appeared that W. P. Wilburn, the husband of Lucinda, had purchased a part of the land left by Samuel Justice, and given notes, etc., and that leave and time were given for the said Lucinda to appear in open court and signify her consent or rejection, and afterward said Lucinda appeared and dissented from the purchase." While the amended bill seeks to make the separate estate of Lucinda and her children account for the deficit between the first and second sales, and for rents of the land while the family lived upon it, in the lifetime of the husband and father, it nowhere and in no way charges that she was, in any sense, a purchaser. So far from any of the parties treating Mrs. Wilburn as

41

a purchaser, she, under order of the court, had con-
firmed a purchase of land from one Cartright, and
out of the fund derived from her father's estate, the
executor and trustee is ordered, and does pay, with-
out objection, one thousand dollars of the purchase
money she had contracted to pay, and the remainder
is directed to be paid out of that fund with the knowl-
edge of and without objection, on the part of com-
plainant, Robertson.

The gravamen of the charges of the amended bill
is, that Mrs. Wilburn was willing to the purchase by
the husband, that she desired to live upon the place
as a home, and signed the note undertaking to bind
her separate estate, and that her subsequent refusal to
take the land is a fraud upon her trustee, the execu-
tor. The answer denies all fraud, and facts claimed
to constitute fraud. It insists that the sale was in
parol; this, however, is not claimed to be of the
knowledge of respondent, nor is it in the form of a
plea. No reference is made to it as a verbal sale,
except as indicated in the answer. The parties to the
sale treated it as valid for about nine years, and
until the death of Wilburn, and no intimation of a
parol sale is made for more than a year after the
death of Wilburn. The parties to it are constantly,
by this pleading, by the report of the executor and
trustee, who made the sale, and the reports of the
master received by them and made at their instance
from 1865 to 1873, recognizing the sale as valid and
binding. In the amended bill the securities to the
notes are made defendants, and relief prayed against

them in the form of judgments. By some means the securities, except Mrs. Wilburn, were dropped from the case, a fact unexplained, unless it be by the statement in the answer of Mrs. Wilburn, that the executor and trustee voluntarily delivered the notes up to them. The executor was trustee for Mrs. Wilburn, and should have advised her fully of all her rights and interests. It is not for him to complain of her for refusing to consent to take land as a payment on her distributive share of her father's estate. His acts must be construed most strongly against himself as between him and his *cestui que trust*. Mrs. Wilburn being *covert*, could not ordinarily bind herself or estate by signing a note as security. She had no power, under her father's will, to bind the estate to which she was entitled under the sixth clause of that will. In dealing with her trustee, who was to use the funds for her benefit, and preserve the *corpus* for her children, the rule should not certainly be relaxed in favor of the trustee.

On the hearing the Chancellor decreed for Mrs. Wilburn and her children, the latter of whom were never before the court until the filing of the amended bill. A majority of the court, Judge Deaderick and the writer not concurring, is of opinion, and it is so ordered, that Mrs. Wilburn will account for the rents of the land for the time of its occupation by herself and husband after his purchase, or at her election no interest will be allowed for that period on the corpus of the fund belonging to herself and children. Should she elect to pay rents out of the interest due her,

the clerk of this court will take the account and report to the present term.

Thus modified, the decree of the Chancellor is affirmed. The costs of this court will be divided. The costs of the Chancery Court will be paid as decreed by the Chancellor.