McGill & Daugherty *v.* Kefauver, Com'r of Finance and Taxation.

(*Nashville,* December Term, 1939.)

Opinion filed March 2, 1940.

TESTERMAN, AMBROSE & BADGETT and W. L. AMBROSE, JR., all of Knoxville, for complainants.

W. F. BARRY and DUDLEY PORTER, JR., Assistant Attorneys-General, for defendant.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

This is a suit to recover a State privilege tax paid under protest. The chancellor granted the relief sought and the State has appealed to this court and assigned errors.

Chapter 108, Article 2, section 1, item 27, Public Acts 1937, imposes a State privilege tax upon each person engaged in the general contracting business in this State. The amount of the tax is based upon the aggregate contract price for construction in any one year.

The question for decision is whether, under Item 27, the State privilege tax can be exacted in each county in which a general contractor performs construction contracts.

McGill & Daugherty is a partnership engaged in the general contracting business, with principal office and place of business in Knox County, and maintains no other office or place of business in any other county in the State of Tennessee.

Complainants admit that by reason of the type of business which they pursue they are taxable, under the Act here in question, as a construction company. It

appears that for the privilege of operating a construction company from July, 1938, to July, 1939, the complainants paid the minimum tax provided in the Act to the County Court Clerk of Knox County and entered into bond to pay the maximum amount, including what might be due the county and State as provided for one year's privilege tax, which bond was approved by the County Court Clerk of Knox County.

Complainants, within the tax year, contracted for and entered upon the construction of certain school buildings in Anderson County, Tennessee. The defendant demanded of complainants that they pay an additional State privilege tax for doing business in Anderson County. Complainants, under threats of the levy of a distress warrant, paid $84 under protest, this being the amount of the State privilege tax and penalties exacted.

By paragraph (j) of section 1, article 1, of the Act in question, it is provided:

"If he maintains only one place of business in a county, from that place extending his operations into adjoining counties without establishing a place of business or a branch office in such adjoining counties, he shall be liable for both state and county tax in the county where the place of business is located but only for the county tax in any other county."

We find nothing in Item 27, Article 2, Section 1, of the Act showing an intention on the part of the Legislature to take general contractors from out of the provisions of paragraph (j) above and subject them to the obligation to pay the State privilege tax in each and every county where they perform construction work.

It is the settled rule of interpretation in this State that statutes levying taxes upon citizens will not be extended by implication beyond the clear import of the

language used. *Chattanooga Plow Co.* v. *Hays*, 125 Tenn., 148, 140 S. W., 1068; *Memphis* v. *Bing*, 94 Tenn., 644, 30 S. W., 745; *Gulf Refining Co.* v. *Graham*, 156 Tenn., 265, 300 S. W., 564.

The contention is made by the State that the paragraph next to the last in Item 27 must be construed as imposing a State tax in each county where contracts are performed, irrespective of whether or not a place of business is maintained in such county. The paragraph referred to reads as follows:

''The tax is payable in such county where work is performed upon the aggregate contract price for contracts in such county.''

The Act provides in section 1, article 1 (*l*), that each county and incorporated city is empowered to levy a privilege tax upon businesses and occupations declared to be a privilege in the Act, not to exceed the amount levied by the State. It is provided in Item 27, that when each person applies for the privilege license for engaging in the business of general construction, ''he shall pay to the county court clerk of the county in which the application is made, the minimum above and shall enter into bond to be approved by the county court clerk in the sum of the maximum amount including what might be due both the county and the state as provided for one year's privilege above, conditioned for the payment of the additional amount of privilege at the termination of 12 months from the date of the application for the privilege license.''

The amount of the privilege tax, as heretofore stated, is graduated on the basis of the aggregate contract price for construction in any one year. If the total of such contracts exceeds $500,000, the tax is $200 per annum; if less than $500,000 and more than $250,000, the tax is

$100; if less than $250,000 and more than $100,000, the tax is $75; if less than $100,000 and more than $50,000 the tax is $50; if less than $50,000 and more than $10,000 the tax is $25; if less than $10,000 the tax is $10. It is this minimum tax of $10 which must be paid to the county court clerk of the county in which the application is made, and the bond required to be approved by the county court clerk is conditioned to pay "the maximum amount including what might be due *both the county and the State* at the termination of 12 months" from the date of the application. (Italics ours.)

██ ██ The license, under the Act, is obtained from the county court clerk of the county in which the application is made, and the Act does not require or contemplate that a license be obtained to cover contracts performed in other counties of the State. But, the counties may levy a similar privilege tax, and it is this tax that is payable in each county where work is performed. The bond given secures the payment of any tax due the county as well as the tax due the State.

The last paragraph of Item 27 is as follows:

"Each original or sub-contractor obtaining the privilege license as above set forth, shall within 15 days after the termination of the 12 months' period for which the privilege license has been issued make and file an accurate statement under oath, of the aggregate amount of contracts taken during the 12 months' period, said statement to be filed with the county court clerk of the county issuing said privilege license, and at the same time shall pay to the county court clerk the additional privilege tax, if any, to which said contractor or subcontractor may be subject or liable under the provisions of this Act, based upon the aggregate amount of contracts taken for the 12 months' period."

█ The statement under oath of the aggregate amount of contracts taken during the twelve months' period, the basis on which the amount of the privilege tax due the State is measured, is contemplated to embrace all contracts of construction performed in the State, and is not confined to contracts performed in the county where bond was given and license obtained. The words "aggregate amount of contracts" mean the total of the contracts performed within the State.

█ The paragraph reading, "The tax is payable in such county where work is performed upon the aggregate contract price for contracts in such county," relied on by the State, has reference alone to the payment of the privilege tax owing a county for contracts performed in such county. To construe this paragraph as imposing upon general contractors a State privilege tax in each county where contracts are performed would do violence to the plain meaning of all of the other paragraphs contained in Item 27. The meaning of a statute is to be determined from the statute taken as a whole and viewing the legislation in the light of its general purpose. *Cummings, Mayor* v. *Sharp, Tax Assessor*, 173 Tenn., 637, 122 S. W. (2d), 423. So construed, Item 27 must be held to impose but one privilege tax for the State. Complainants were not, therefore, liable to the State for an additional privilege tax because of the contract for construction work performed in Anderson County.

The decree of the chancellor is affirmed.