# MATTHEW TUCKER v. McDELL'S, INC., et al. —359 S. W. (2d) 597.

Eastern Section. October 24, 1961.

Certiorari Denied by Supreme Court February 8, 1962.

· Cox, Epps, Powell & Weller, Johnson City, for plaintiff in error.

Simmonds, Bowman & Herndon, and Thomas E. Mitchell, Johnson City, for defendants in error.

COOPER, J. The plaintiff, Matthew Tucker, sued to recover the purchase price of capital stock in the corporate defendant, claiming it was sold to him by the defendants, McDell's Inc., Joe McCoy and W. G. Waddell, in violation of the provisions of the Securities Law of 1955 (T. C. A. sec. 48-1601 et seq.), and to recover attorney's fees and court costs authorized by said statute. The Court found in favor of the defendants and a judgment

was entered dismissing the suit at the plaintiff's cost. The plaintiff filed a "renewed motion for a directed verdict and for a new trial", and, when it was overruled, appealed in error to this Court.

In his declaration, the plaintiff alleged that he purchased 50 shares of stock from the defendant corporation for $5,000.00, and that the defendants Joe McCoy and W. G. Waddell, as officers and directors of the corporation, participated and aided in the sale; that after making the purchase, the plaintiff found that the stock of the defendant corporation had not been registered under the Securities Law of 1955, and that the defendant corporation was not a registered dealer of securities.

The plaintiff further alleged that he elected to declare the purchase of the stock void as provided in said Securities Act, and tendered the stock certificates to the corporate defendant and demanded full payment of the purchase price of the stock, with interest. When the demand was not met, the plaintiff filed this suit.

The defendants plead "nil debit"; denied that they contracted with the plaintiff; denied that they offered or ever intended to offer any stock for sale to the public, and alleged that they did not, therefore, come within the purview of the Securities Act of 1955; and specifically plead estoppel.

The case was tried to a jury, and, after hearing the evidence, the Court, with the approval of all parties, withdrew the case from the consideration of the jury and found in favor of the defendants as set out above.

The material facts in this cause are not disputed. Mc-Dell's Inc. was incorporated under the laws of the State

of Tennessee on March 22, 1956, with authority to have outstanding five hundred shares of $100.00 par value common stock. Gregg McCoy and the defendants, Joe McCoy and W. G. Waddell, were the incorporators, and subscribed for an aggregate of 100 shares of stock. There were no other stockholders. The defendant Joe McCoy was elected president, the defendant Waddell was elected secretary-treasurer, and Gregg McCoy was elected vice-president. The three incorporators were elected directors.

The Corporation began the manufacture and sale of heat cables, and wall and bathroom heaters in the sum mer of 1956. The corporation prospered and showed a net profit of $6990.73 for the period of January 1, 1957 to August 31, 1957.

In an effort to increase its capitalization, the corporate defendant, through the defendants McCoy and Waddell, negotiated with the plaintiff during the months of July and August, 1957 in an effort to sell 50 shares of stock. The plaintiff visited the corporate place of business near Jonesboro, Tennessee, and examined the corporate books and observed the physical properties. The defendant Waddell prepared a financial statement, a profit and loss statement and an inventory sheet for the plaintiff.

In September 1957, the plaintiff agreed to buy fifty shares of the corporate stock at par of $100.00 per share, with the understanding that the plaintiff would be a director and vice-president. The plaintiff met with stockholders and directors of the corporate defendant on September 9, 1957. The by-laws of the corporation were amended to increase the number of directors and officers and to provide for the sale of the stock. The plaintiff subscribed

for 50 shares of stock and paid the sum of $5,000.00 to the corporate defendant. The plaintiff was immediately elected a director and vice-president of the corporate defendant.

After becoming an officer and director, the plaintiff kept in close touch with the business, checking the books and accounts each week, and aiding in the collection of delinquent accounts. He attended the annual meetings of stockholders and of the directors, and helped set the policy of the company. He was one of the directors that decided that the corporate defendant should "devote an all out effort to speed the manufacture and get a patent on the thermostatic line voltage control".

The defendant corporation was unable to manufacture thermostats competitively with other and larger corporations, and the directors and stockholders decided to liquidate the corporation. The plaintiff took part in this decision, and voted to liquidate.

Several months later and after liquidation was well underway, if not completed, the plaintiff tendered the return of the stock in the corporate defendant and made demand for payment of the purchase price, plus 5 per cent interest.

The stock of the corporate defendant had not been registered under the Securities Law of 1955, and the corporation was not a registered dealer of securities in this State.

T. C. A. sec. 48-1607 provides:

*"Securities must be registered—Exceptions.* — It shall be unlawful to sell any securities within this state, except those exempt under sec. 48-1619 or those

sold in transactions exempt under sec. 48-1632, unless such securities shall have been registered as provided in secs. 48-1608—48-1614.''

Under T. C. A. sec. 48-1645, it is provided:

''Every sale * * * made in violation of any of the provisions of this chapter * * * shall be voidable at the election of the purchaser. The person making such sale * * *, and every director, officer, salesman or agent of or for such seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser * * upon tender to the seller, in person or in open court, of the securities sold * * *, for the full amount paid by such purchaser together with all taxable court costs and reasonable attorney's fees in any action or tender under this section; * * *.''

There is no contention that the stock of the defendant corporation is an exempt security under T. C. A. sec. 48-1619.

Considering the above evidence in the light of the pleadings and the quoted sections of the Securities Law of 1955, it is evident that the defendants are jointly and severally liable to the plaintiff for the purchase price of the stock in question, together with all taxable court costs and reasonable attorney's fees, if

(1) the Securities Law of 1955 is applicable to a single privately negotiated sale of stock; and

(2) the plaintiff is not estopped from asserting any rights he might have under the Securities Law of 1955 by reason of his acts after purchasing said stock.

It is insisted by the defendants that the legislature intended that the Securities Act of 1955 apply only to "public offerings" of stock, and not to a single private sale. In support of this insistence, the defendant points out that the "notice of intention to sell securities" and the "prospectus", both necessary to registration, required information as to the "price at which the securitie are to be offered for sale to the public" (T. C. A. sec. 48-1608(1) (c), (2) (c)); and that the commissioner, in determining whether or not the securities should be registered, will take into consideration "the offering price of the securities to the public". (T. C. A. sec. 48-1613 (7)).

The manifest intent of the legislature in enacting the Securities Act of 1955 was to protect the investor against the imposition of unsubstantial, unlawful and fraudulent stock and investment schemes. See First Nat'l Savings Foundation v. Samp, 274 Wis. 118, 80 N. W. (2d) 249; People v. Syde, 37 Cal. (2d) 765, 235 P. (2d) 601; Curtis v. State, 99 Ga. App. 732, 109 S. E. (2d) 868; Fletcher, Cyclopedia Corporations, Sec. 6736; 47 Am. Jur., Securities Act, Sec. 1; 87 A. L. R. 43.

It is a generally accepted principle of statutory construction, that in construing a statute, all its sections are to be construed together in the light of the general purpose and plan, the evil intended to be remedied, and the object to be obtained, and if the language is susceptible to more than one construction, the statute should receive the construction that will effect its purpose rather than defeat it. Vandergriff v. Seeber, 187 Tenn. 561, 216 S. W. (2d) 311; McGill & Daugherty v. Kefauver, 175 Tenn. 667, 137 S. W. (2d) 279; Cummings v. Sharp. 173

Tenn. 637, 122 S. W. (2d) 423; State v. Dyer, 171 Tenn. 66, 100 S. W. (2d) 653; 50 Am. Jur., Statutes, Sec. 306 et seq.

■ Bearing in mind the above principle, we are of the opinion that the legislature intended that the Securities Act of 1955 be applicable to *all* sales of securities in Tennessee (except those expressly exempt)—whether they are sold by private sale or by public offering.

Sales covered under the Act are defined in T. C. A. sec. 48-1602(H) as:

" 'Sale' or 'sell' shall mean *every* sale or other disposition of a security or interest in a security for value, and every contract to make any such sale or disposition. Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing, shall be conclusively presumed to constitute a part of the subject of such purchase and to have been sold for value." (emphasis supplied)

If private sales of stock were excluded from the protection of the Act, its effectiveness would be materially reduced as it would leave a way open for the unscrupulous schemer to prey on the public.

We think that the legislature's intent that the Securities Act of 1955 be "all inclusive with respect to sales of securities by a corporation" was further evidenced by the provision that isolated sales of securities by the owner of the securities are exempt except those where (1) the owner is the issuer of the securities; (2) the sale of the securities is made directly or indirectly for the benefit of the issuer; or (3) where the sale is made in the course of repeated and successive transactions by the owner of the securities. T. C. A. sec. 48-1632(D)

"Issuer" is defined in T. C. A. sec. 48-1602(E) as "every person who issues or proposes to issue any security", (certain exceptions not applicable to this case are then listed).

In the present case, as the owner of the stock sold was the issuer, and the sale was made for its direct benefit, the sale was not an exempt transaction, and was within the purview of the Securities Act of 1955. Further, the sale was unlawful as the securities sold were not registered in compliance with the Act. T. C. A. sec. 48-1607.

Is the plaintiff estopped from avoiding the stock purchase as provided in T. C. A. sec. 48-1645 by reason of his actions after purchasing stock? We think he is.

As shown above, at the same instant plaintiff purchased stock in the defendant corporation, and as part of the consideration for its purchase, the plaintiff was elected a vice-president and director of the corporation. He immediately began taking an active part in the affairs of the corporation, attended all meetings of the directors and stockholders over a period in excess of a year, and voted on and approved all changes in the policy of the corporation, including the decision to manufacture thermostats in competition with other and larger corporations. The plaintiff also participated in the decision to liquidate the corporation and, as the largest individual stockholder, voted in favor of liquidation. Several months after voting to liquidate the corporation, the plaintiff decided to exercise the option given him by T. C. A. sec. 48-1645 and rescind his purchase of stock in the defendant corporation.

We think that where an investor takes as active a part in the management of a corporation, in which he has purchased stock, as did the plaintiff in this case, his conduct should and does estop him from rescinding his stock purchase. Cf. Moore v. Manufacturer's Sales Co., 335 Mich. 606, 56 N. W. (2d) 397; Schrier v. B & B Oil Co., 311 Mich. 118, 18 N. W. (2d) 392.

The judgment of the Court below is, therefore, affirmed. Costs of the appeal are adjudged against the plaintiff and its surety on the appeal bond.

McAmis, P.J., and Hale, J., concur.