STATE of Tennessee

v.

Nick NETTO et al. and J. R. Montgomery, alias.

Supreme Court of Tennessee.

Nov. 6, 1972.

David M. Pack, Atty. Gen., State of Tennessee, C. Hayes Cooney, Asst. Atty. Gen., Nashville, for appellant.

Willis, Knight & Barr, John W. Wagster, Nashville, for appellees.

## OPINION

McCANLESS, Justice.

This case involves the interpretation and construction of Section 39–2017, Tennessee Code Annotated, as amended by Chapter 167, Public Acts of 1971:

"39–2017. *Lottery — Penalty. —* Any person who makes or aids in making, draws or aids in drawing, or is in any way interested or concerned in the making or drawing of any lottery, under any pretense whatever, is guilty of a misdemeanor, and, upon conviction, shall be fined in the sum of one thousand dollars ($1,000), and imprisoned in the county jail three (3) months.

"The organization of any chain letter club, pyramid club, or other group organized or brought together under any plan or device whereby fees or dues or anything of material value to be paid or given by members thereof are to be paid or given to any other member· thereof, which plan or device includes any provision for the increase in such membership through a chain process of new members securing other new members and thereby advancing themselves in the group to a position where such members in turn receive fees, dues or things of material value from other members, is hereby declared to be a lottery, and whoever shall participate in any such lottery by becoming a member of, or affiliating with, any such group or organization or who shall solicit any person for membership or affiliation in any such group or organization shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000), or by imprisonment in the county jail for a period of not more than three (3) months, or both."

The grand jury indicted the defendants, charging that each "did participate in and solicit other persons for affiliation in a group, to wit: 'Dare to Be Great,' organized under a plan whereby membership is increased through a chain process of new members securing other members and thereby advancing themselves in the group to a position where such members in turn receive fees from other members, to wit: said (naming each defendant) did represent himself as a member of the said group, 'Dare to Be Great,' and as a sales agent of said group, and did solicit others to become members of said group which was represented as a motivational course consisting of· tape cassettes, material in notebook form, and a training class in salesmanship, and did represent that other people, by becoming members of said group, 'Dare to Be Great,' could advance themselves and earn commission fees by securing other new members in said group,

thereby operating a lottery in violation of Section 39–2017, Tennessee Code Annotated, as amended by Chapter 167, Public Acts of 1971, and against the peace and dignity of the State of Tennessee."

The defendants moved to quash the indictments on the ground that the statute upon which the indictments were based violated their right to due process of law because it was, on its face, written in terms so vague that men of common intelligence must guess at its meaning. The motion was sustained, and the State was granted a direct appeal to this Court since a constitutional question alone is involved.

The sole issue for determination is whether Section 39–2017, T.C.A., is unconstitutionally vague and overbroad so as to deprive defendants of their rights under the due process clause of the Fourteenth Amendment of the Constitution of the United States and Article 1, Section 8 of the Constitution of Tennessee.

■■■ Both principles of law and considerations of policy govern the determination whether a statute fulfills its requirements under the due process clause of the Fourteenth Amendment. Courts are often prone, however, to adopt concise phrases from well written opinions which summarily embrace a given standard. It is said that a statute which either forbids or requires the doing of an act in terms so vague "that men of common intelligence must necessarily guess at its meaning" and differ as to its application violates the first essential of due process of law. Connally v. General Construction Company, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 326 [1926]. The line of demarcation between what is lawful and what is unlawful cannot be left to conjecture. The statute must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. Roberts v. Clement, 252 F.Supp. 835 [D.C.Tenn.1966]. No one should be required at peril of life, liberty, or property to speculate as to the meaning of penal statutes. Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 [1939]. On the other hand, legislatures when adopting such statutes as the one in question are reluctant to define such conduct in specific terms; for to do so would encourage the circumvention of such laws through the varied schemes that ingenious persons may discover.

■■■ While statutory laws in derogation of the common law are to be strictly construed and are not to be extended beyond their plain meaning, the intent of the legislature must govern. Statutes are not to be construed so strictly as to defeat the obvious intention of the legislature. Southern Ry. Co. v. Sutton, 6 Cir., 179 F. 471 [1910]. Questions involving statutory construction ". . . must be answered in the light of reason, having in mind the object of the statute, and the mischief it aims at." Southern Ry. Co. v. Sutton, supra. Courts should, if possible, sustain the validity of a statute and should not construe it in a manner which would defeat it. State v. Cooley, 141 Tenn. 33, 206 S.W. 182 [1918].

Article Eleven, Section five of the Tennessee Constitution provides:

"The Legislature shall have no power to authorize lotteries for any purpose, and shall pass laws to prohibit the sale of lottery tickets in this State."

■■■ This provision has been interpreted as a blanket prohibition against lotteries. Bass v. City of Nashville, 19 Tenn. 421 [1838]. The legislative intent of Section 39–2017, T.C.A., seems clear: to prohibit "the organization of any . . . pyramid club, or other group organized . . . under any plan . . . whereby fees . . . given by members thereof are to be paid or given to any other member thereof, which plan includes any

provision for the increase in such membership through a chain process of new members securing other new members and thereby advancing themselves in the group to a position where such members in turn receive fees . . . ." The statute is designed to proscribe all marketing plans of any description which are in the nature of lotteries.

In the recent case of M. Lippincott Mortgage Investment Co. of Florida v. Childress, Fla.App., 204 So.2d 919 [1968], the court interpreted a Florida statute (see F.S.A. § 849.091) similar to the Tennessee statute.

The case involved a suit by an assignee on a note against the buyers of a central home vacuum cleaning unit. The buyers sought to have the note declared void since the conduct under which the note was given constituted a lottery within F.S.A. § 849.091. The facts involved were that a purchaser would buy a unit and sign a note for its purchase price. In turn, the purchaser would become a "representative" of the company under a commission agreement. Under the agreement, the purchasers would submit a list of prospective purchasers and for each unit sold to the prospects so furnished, a $50.00 commission would be paid. In turn, each prospect would be offered the same proposal, and for each person referred by the original purchaser's prospect to whom a unit was sold, the original purchaser would get another $50.00. The court held this to be a lottery within the meaning of the statute. We need only to substitute a "motivational sales course" for the vacuum cleaners to find virtually the same facts presented by the case before us. In a similar case involving the sale of radio intercoms and fire alarm systems a Washington court held:

"The court will inquire, not into the name, but into the game, however skillfully disguised, in order to ascertain if it is prohibited, or if it has the element of chance. It is the one playing at the game who is influenced by the hope enticingly held out, which is often false or disappointing, that he will, perhaps by good luck, get something for nothing or a great deal for a very little outlay. This is the lure that draws credulous and unsuspecting into the deceptive scheme, and it is what the law denounces as wrong and demoralizing." Sherwood and Roberts-Yakima, Inc. v. Leach, 67 Wash.2d 630, 409 P.2d 160 [1965].

Likewise, we are of the opinion that the conduct which is proscribed by the statute is determinative, and not whether it is deemed a lottery, a scheme, plan, device, or by whatever other designation.

Counsel for the defendants argue that the words, "group", "members", and "advance themselves in a group" are so vague and incapable of precise definition as to render the statute constitutionally infirm. However, in construing a statute, all sections are to be construed together in light of the general purpose and plan, evil to be remedied, and object to be attained, and if the language is susceptible of more than one construction, the statute should receive the construction that will effect rather than defeat its purpose. Tucker v. McDell's Inc., 50 Tenn.App. 62, 359 S.W. 2d 597 [1961].

The statute should be given a construction that will not render its terms useless. Tasco Developing & Bldg. Corp. v. Long, 212 Tenn. 96, 368 S.W.2d 65 [1963]. We are of opinion that the words of Section 30–2017, T.C.A., fulfill the requirements of reasonable certainty under the due process clause of the Fourteenth Amendment. The statute does so through the ". . . use of ordinary terms to express ideas which find adequate usage and understanding. The use of common experience as a glossary is necessary to

meet the practical demands of legislation." Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167 [1932]. A lack of precision is not itself offensive to the requirements of due process. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 [1957].

The Constitution does not require impossible standards; all that is required is that the language convey a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more. United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 [1947].

"The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." Colten v. Ky., 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 [1972].

We agree with the holding of the Kentucky Court. Citizens who desire to obey the statute will have no difficulty in understanding it. Cotten v. Commonwealth (Ky.1971) 467 S.W.2d 374.

We perceive no violation of the underlying principle that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

We hold that the statute is valid and that the motions to quash the indictments should have been overruled. We therefore remand the case to the Criminal Court for trial.

DYER, C. J., CHATTIN and HUMPHREYS, JJ., and COOPER, Special Justice, concur.