IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 14, 2005 Session

## SATURN CORPORATION v. RUTH JOHNSON, COMMISSIONER OF REVENUE, STATE OF TENNESSEE

Appeal from the Chancery Court for Davidson County
No. 02-2684-II     Carol McCoy, Chancellor

No. M2004-02067-COA-R3-CV - Filed April 18, 2006

Saturn Corporation appeals the Chancery Court's entry of summary judgment in the Commissioner's favor.  Saturn filed its action in Chancery Court seeking a refund of a percentage of franchise and excise taxes paid in fiscal year 1999-2000.  In this *de novo* review of the trial court's judgment, we hold that the exemption claimed does not apply to the taxpayer, that the exemption as applied does not violate the equal protection provisions of state and federal constitutions, and affirm the trial court's judgment in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

Frank N. Stockdale Carney, Katharine A. Jungkind, Memphis, Tennessee; Paul D. Krivacka, Nashville, Tennessee, for the appellant, Saturn Corporation.

Paul G. Summers, Attorney General and Reporter; Jonathan N. Wike, Assistant Attorney General; for the appellee, Rule Johnson, Commissioner of Revenue, State of Tennessee.

### OPINION

This appeal originated as an action for refund of franchise and excise taxes paid by the taxpayer, Saturn Corporation ("Saturn").  Saturn urged in its Complaint that, pursuant to Tennessee Code Annotated section 56-4-217(b), it was entitled to the credit provided thereby.  The Tennessee State Commissioner of Revenue ("Commissioner") responded urging that the proper interpretation of the statute did not entitle Saturn to the credit it claimed.  Instead, subsection (b) and (c) of section 217 were intended by the legislature to apply only to insurance companies as that term is defined in Tennessee Code Annotated section 56-4-201.  The controversy being one solely of statutory construction, both parties filed cross-motions for summary judgment.  Upon consideration of those

motions, the trial court entered judgment in favor of the Commissioner, and Saturn appealed. The statute upon which Saturn relies contains the following provisions:

**§ 56-4-217.  Credit against franchise and excise taxes**

(a) The amount of the premium taxes collected under the provisions of §§ 56-4-201- -56-4-214 shall be a single credit against the sum total of the taxes imposed by the Franchise Tax Law, compiled in title 67, chapter 4, part 21, and by the Excise Tax Law, compiled in title 67, chapter 4, part 20.

(b) To the extent any franchise or excise tax liability remains after application of the credit set forth in subsection (a), such tax liability shall be reduced by the applicable percentage as follows:

(1) For tax years beginning on or after December 15, 1998, but not after December 14, 1999, the remaining liability after application of the credit shall be reduced by twenty percent (20%).

(2) For tax years beginning on or after December 15, 1999, but not after December 14, 2000, the remaining liability after application of the credit shall be reduced by forty percent (40%).

(3) For tax years beginning on or after December 15, 2000, but not after December 14, 2001, the remaining liability after application of the credit shall be reduced by sixty percent (60%).

(4) For tax years beginning on or after December 15, 2001, but not after December 14, 2002, the remaining liability after application of the credit shall be reduced by eighty percent (80%).

(c) For tax years beginning on or after December 15, 2002, the excise tax imposed by title 67, chapter 4, part 20, and the franchise tax imposed by title 67, chapter 4, part 21, shall no longer be applicable to insurance companies, as defined in § 56-1-102(2).

1945 Pub.Acts, c. 3, § 4; 1947 Pub.Acts, c. 201, § 1; 1997 Pub.Acts, c. 508, § 1, eff. June 13, 1997.

Tenn.Code Ann. § 56-4-217(2005 supp.).

Saturn claims the credits for tax years 1999 and 2000, urging that, since subsection (a) of the statute allows credit for premium taxes paid by workers' compensation self-insurers under Tennessee Code Annotated section 56-4-206, the portion of the statute appearing as subparagraph (b), directly

applies to self insurers as well. To the contrary, the Commissioner argues that, since subparagraph (b) was added to section 217 in conjunction with subparagraph (c), which specifically references insurance companies as defined in section 56-1-102(2), the credit described in subparagraph (b) does not apply to Saturn as a workers' compensation self-insurer. The first paragraph clearly does refer to all taxpayers referenced in sections 56-4-201 through section 56-4-214. Subsection (c) clearly references only insurance companies as defined in section 56-1-102. Inasmuch as our resolution of the issues on appeal deals solely with the question of the construction of this statute to the undisputed facts on cross-motions for summary judgment, we review the finding of the trial court *de novo* with no presumption of correctness. *See* Tenn.R.Civ.P. 13. *See also* Tenn.R.App.P. 56; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993).

This Court has set forth the starting point in our analysis:

We begin our analysis of these issues with the well-established rule that courts must construe tax statutes liberally in favor of the taxpayer and, conversely, strictly against the taxing authority. *See White v. Roden Elec. Supply Co.*, 536 S.W.2d 346, 348 (Tenn.1976); *Memphis St. Ry. v. Crenshaw*, 165 Tenn. 536, 55 S.W.2d 758, 759 (Tenn.1933). Where any doubt exists as to the meaning of a taxing statute, courts must resolve this doubt in favor of the taxpayer. *See Memphis Peabody Corp. v. MacFarland*, 211 Tenn. 384, 365 S.W.2d 40, 42 (1963); *accord Carl Clear Coal Corp. v. Huddleston*, 850 S.W.2d 140, 147 (Tenn.Ct.App.1992). Courts may not extend by implication the right to collect a tax "beyond the clear import of the statute by which it is levied." *Boggs v. Crenshaw*, 157 Tenn. 261, 7 S.W.2d 994, 995 (1928). By the same token, courts must give effect to the "plain import of the language of the act" and must not use the strict construction rule to thwart "the legislative intent to tax." *International Harvester Co. v. Carr*, 225 Tenn. 244, 466 S.W.2d 207, 214 (1971); *see also Bergeda v. State*, 179 Tenn. 460, 167 S.W.2d 338, 340 (1943) (indicating that courts "must give full scope to the legislative intent and apply a rule of construction that will not defeat the plain purposes of the act").

*American Airlines, Inc. v. Johnson*, 56 S.W.3d 502, 504 (Tenn.Ct.App.2000).

Where no ambiguity in the act exists, comments of legislators or even sponsors of the legislation before its passage cannot be effective to change the clear meaning of the act. *See A.T.S. Southeast, Inc. v. Carrier Corp.*, 18 S.W.3d 626 (Tenn.2000). Legislators are presumed to have knowledge of their prior enactments and to know the state of the law at the time new legislation passes. *See Lavin v. Jordan*, 16 S.W.3d 362 (Tenn.2000). However, when the plain language of a statute is reasonably capable of conveying more than one meaning, the legislative history, finance sheets and comments appearing in the legislative debates may be examined to determine the reasonable intent of the legislature. *International Harvester Co. v. Carr*, 225 Tenn.244, 466 S.W.2d 207, 214 (1971). The threshold question to be answered, therefore, is whether, Tennessee Code

Annotated section 56-4-217 is susceptible to two reasonable interpretations. Tennessee Code Annotated section 56-4-201 defines the term "insurance companies:"

### § 56-4-201. Companies Subject to Tax; "insurance company" defined

(a) Every domestic or foreign insurance company writing life, fire, marine, fidelity, surety, casualty, liability, or other forms of insurance shall pay directly to the commissioner the taxes as provided for in this part.

(b) "Insurance company," as generally defined for the purpose of this part, means any insurance, fidelity or surety company, including any corporation, company, partnership, association, society, order, fraternal or otherwise, individual or aggregation of individuals engaging in, or proposing or attempting to engage in, any kind of insurance or surety business, including the exchanging of reciprocal or interinsurance contracts between individuals, partnerships and corporations.

Tennessee Code Annotated section 56-4-205 sets out the tax on gross premiums owed by these insurance companies and excludes from the application of that section insurers under the Tennessee workers' compensation statutes and workers' compensation self-insurers. Section 206 defines the tax on workers' compensation insurance companies, and section 207 addresses the tax owed by self-insurers. That latter statute sets forth the following:

### § 56-4-207. Self-insured employers

(a) If any employer covered by provisions of title 50, chapter 6, known as the Workers' Compensation Law, or any amendatory acts thereto, shall carry its own insurance as provided by that chapter, such employer shall pay to the commissioner four percent (4%) on the premium which the employer would be required to pay if the employer carried the full coverage insurance called for with licensed insurance companies; provided, that the tax so paid by any employer shall in no instance be less than five dollars ($5.00), and a surcharge of four tenths of one percent (.4%) on such premium the employer would have been required to pay, such surcharge to be earmarked for the administration of the Tennessee Occupational Safety and Health Act, compiled in title 50, chapter 3. The tax shall be paid by such self-insurers to the commissioner on or before June 30 of each year. Any company or corporation electing to operate as a self-insurer and having been duly qualified as such subsequent to June 30 of any year shall pay the tax based on the estimated payroll for the balance of the year when the permit is issued; provided, that the surcharge of four tenths of one percent (.4%) on the tax on workers' compensation insurance premiums levied by the provisions of this section shall not apply to any employer who employs ten (10) or less employees unless such employer is in the business of construction or manufacturing.

(b) The provisions of this section shall not apply to county or municipal governments.

Tenn.Code Ann. § 56-4-207.

Two plausible interpretations exist as to the overall meaning of Tennessee Code Annotated section 56-4-217. Considering subsections (a) and (b) without regard to subsection (c), the interpretation by Saturn is plausible. Subsection (a) is inclusive of self-insurers by its terms. Subsection (b) would seemingly be applicable to self-insurers since it is based upon matters set forth in subsection (a).

When subsection (c) is considered, however, the construction sought by the Commissioner is plausible. Subsection (b) provides for graduated percentages of reduction in franchise and excise tax liability over a period of four years. After that, subsection (c) becomes effective and brings an end to franchise and excise taxes, but by its terms is applicable only to "insurance companies."

The statute in its entirety thus becomes ambiguous within the rules of statutory construction. It is long settled that:

> We emphasize that the role of this Court in construing statutes is to ascertain and give effect to legislative intent. *See Cronin v. Howe*, 906 S.W.2d 910, 912 (Tenn.1995). When the language of a statute is unambiguous, legislative intent is to be ascertained from the plain and ordinary meaning of the statutory language used. *See Carson Creek Vacation Resorts, Inc. v. State, Dep't. of Revenue*, 865 S.W.2d 1, 2 (Tenn.1993). Where as here, the parties legitimately have different interpretations of the same statutory language, an ambiguity exists, and we may consider the legislative history and the entire statutory scheme for interpretive guidance. *See Carter v. State*, 952 S.W.2d 417, 419 (Tenn.1997); *Owens v. State*, 908 S.W.2d 923, 926 (Tenn.1995); *Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn.1994).

*McCoy v. T.T.C., Illinois Inc.*, 14 S.W.3d 734, 738 (Tenn.2000).

Faced with a similar dispute regarding the meaning of a legislative enactment and the tools available to the court in determining that meaning, the Supreme Court held:

> "[T]he most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Worley v. Weigels, Inc*, 919 S.W.2d 589, 593 (Tenn.1996) (*quoting Owens v. State*, 908 S.W.2d 923, 926 (Tenn.1995)); *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn.1993). Legislative intent and purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, without a forced or subltle construction that would limit or extend the meaning of the language. *Tuggle v. Allright Parking Sys., Inc.*, 922 S.W.2d 105, 107 (Tenn.1996); *National Gas Distrib., Inc. v. State*, 804 S.W.2d 66 (Tenn.1991). When the language is ambiguous and does not yield a clear interpretation, the court may consult the legislative history for additional interpretive guidance. *Storey v. Bradford Furniture*

*Co.*, 910 S.W.2d 857, 859 (Tenn.1995); *see also Carr v. Ford*, 833 S.W.2d 68, 69-70 (Tenn.1992).

We find the language of the enabling provision ambiguous. The meaning of the phrase "any person having a ground for relief recognized under this act" is uncertain. The interpretation proffered by the petitioner is that the phrase means any person alleging a constitutional defect in the conviction or sentence, regardless of whether the claim would have been barred under the previous statute of limitations. As the State points out, however, the phrase is just as susceptible of being interpreted to mean any person having a cognizable ground for relief that is not barred by the previous statute of limitations. The mere fact that this phrase is reasonably interpreted either way makes it ambiguous.

Where the language of a legislative provision in unclear, the Court should look behind the face of the statute to determine the legislature's intent. First, we note that the changes to the post-conviction statutes, in every instance, limited the time and opportunity to file petitions for relief. According to Representative Jere Hargrove, the sponsor of the proposed bill, the legislation was written to address constituents' concerns about the inordinate amount of time allowed in post-conviction proceedings. He explicitly stated that the purpose of the bill was to put time constraints on the "interminable duration of criminal appeals." Tennessee General Assembly, House Tape No. 59, 99th G.A., 1st Sess. (April 19, 1995) (statement of Representative Hargrove).

*Carter v. State*, 952 S.W.2d 417, 419 (Tenn.1997).

While subsection (a) of Tennessee Code Annotated section 56-4-217 has been part of the Tennessee Code since 1945, the provisions of subsection (b) and (c) were enacted as part of Chapter 508 of the Public Acts of 1997. It is the 1997 Act that introduces the controversy between the parties. The legislative history of Chapter 508 of the Public Acts of 1997 is enlightening.

Before the May 27, 1997, House Finance, Ways and Means Committee meeting, Rep. Kisber explained the bill as follows:

House Bill 1759 is a bill that addresses the retaliatory features of the franchise/excise tax as applied to domestically domiciled insurance companies. This bill would phase out that tax provision beginning with returns filed after December 15, 1998. It would be phased in over a period of time that would fully be implemented in the year 2000- -- fiscal year 2002-2003.

Tennessee General Assembly, House Finance, Ways and Means Committee Tape #1, 100th G.A. 1st sess. (May 27, 1997) (Statement of Rep. Matt Kisber).

Likewise, on May 28, 1997, Rep. Kisber gave the following explanation:

> Thank you, Mr. Speaker. . . . House Bill 1759 is a bill that addresses a situation of double taxation on insurance companies in Tennessee. Tennessee is one of only a few states that impose the franchise and excise tax as well as the premium tax on insurance companies. This double taxation results also in a punitive nature in that other states base their tax on the domicile state of the insurance company which causes a retaliatory feature for those companies who are domiciled or headquarterd in Tennessee that do business in other states. The net effect of this according to a study done by the University of Tennessee, Dr. Bill Fox, upon whom we rely for quite a bit of our financial information within state government, concluded that insurance companies pay a much higher percentage of their profits in Tennessee than do other businesses that do business in Tennessee because of this provision. This provision negates advantages that could otherwise attract more companies headquartered in, to headquarter in Tennessee due to the fact that we have many of the incentives in terms of a pro-business state government, high worker productivity, and a sophisticated system of telecommunications. This bill would phase in, would phase in the reduction on the franchise/excise tax beginning in 1998-'99 and would conclude it in the year 2002-2003 in order that it would not adversely impact anything that's planned in the State of Tennessee currently. Pending any questions, I would move passage of House Bill 1759 on third and final consideration.

Tennessee General Assembly, House Seesion Tape #H-95, 100th G.A. 1st sess. (May 28, 1998) (Statement of Rep. Matt Kisber).

After the bill passed the House on the same day, the Senate sponsor, Sen. Rochelle, made the following statements before the Senate Finance, Ways and Means Committee meeting on April 1, 1997:

> This is the excise/franchise tax on insurance companies. This is the one where we're facing retaliation from other states; they make our companies pay those in addition to their locals, and this is something that is really needed. It is phased in . It's not in the next budget year, I don't believe, but it is phased in over a period of time.

Tennessee General Assembly, Senate Finance, Ways and Means Committee Tape #2, 100th G.A. 1st sess. (Apr. 1, 1997) (Statement of Senator Bob Rochelle).

During a May 26, 1997, meeting of the same committee, Sen. Rochelle stated:

> This is on taxation of insurance companies. You may have seen the article in the Banner this afternoon endorsing this. This is the retaliatory tax; I think Senator Henry has spoken in favor of this issue in the past. I'd move to recommend passage.

Tennessee General Assembly, Senate Finance, Ways and Means Committee Tape #5, (May 26, 1997) (Statement of Sen. Bob Rochelle).

Just before the Senate passed the bill during the Senate session on May 30, 1997, Sen. Rochelle stated:

> This addresses the retaliatory tax situation on insurance companies, and I hope that everybody's had an opportunity to have a discussion on it.

Tennessee General Assembly, Senate Session Tape S-111, 100th G.A., 1st sess.  (May 30, 1997) (Statement of Sen. Bob Rochelle).

When the legislative history of Chapter 508 of the Public Acts of 1997 is considered, it becomes clear that the legislative intent restricted subsection (b) to "insurance companies, as defined in section 56-1-102(2)," just as that language appears in subsection (c).

As stated by Chief Justice Grafton Green for the Supreme Court:

> However, we are relieved of all difficulty on this point, because chapter 2 and chapter 3 were companion acts passed at the same session of the Legislature and on the same subject — compulsory legalized primaries.  The rule of construing statutes in pari materia is of peculiar force when such statutes are enacted at the same session of the Legislature.  "This being so, and the statutes having been passed at the same session of the Legislature, they should be construed as one act."    *Hill v. Roberts*, 142 Tenn. 215, 217 S.W. 826, 828; *Bird v. State*, 131 Tenn. 518, 175 S.W. 554, Ann.Cas. 1917A, 634.
>
> We can look, therefore, to one act to supply any deficiencies or omissions in the other.  This is common practice in statutory construction.
>
> "Where two acts in pari materia are construed together, and one contains provisions omitted from the other, the omitted provisions will be applied in the proceeding under the act not containing such provisions, where not inconsistent with the purpose of the act."  59 C.J. 1050.

*Gates v. Long*, 113 S.W.2d 388, 392 (Tenn.1938).

The rule relative to *pari materia* construction applies not only to separate statutes but also with equal force to separate provisions within a single statute.  *Town of Mt. Carmel v. City of Kingsport*, 397 S.W.2d 379, 382 (Tenn.1965).  *See* 73 Am.Jur. 2d, Statutes, § 105 (2005).

Thus, the provision in subparagraph (c) restricting its application to "insurance companies" is applicable alike to subsection (b).

The manifest intention of the legislature in enacting Chapter 508 of the Public Acts of 1997 was to restrict its application to insurance companies.

> It is a generally accepted principle of statutory construction, that in construing a statute, all its sections are to be construed together in the light of the general purpose and plan, the evil intended to be remedied, and the object to be obtained, and if the language is susceptible to more than one construction, the statute should receive the construction that will effect its purpose rather than defeat it. *Vandergriff v. Seeber*, 187 Tenn. 561, 216 S.W.2d 311; *McGill & Daugherty v. Kefauver*, 175 Tenn. 667, 137 S.W.2d 279; *Cummings v. Sharp*, 173 Tenn. 637, 122 S.W.2d 423; *State v. Dyer*, 171 Tenn. 66, 100 S.W.2d 653; 50 Am.Jur., Statutes, Sec. 306 *et seq.*

*Tucker v. McDell's, Inc.*, 359 S.W.2d 597, 599-600 (Tenn.1962).

When construing all provisions of Tennessee Code Annotated section 56-4-217 under the applicable rules of statutory construction as integral parts of the statutory scheme, the plausibility of the position taken by Saturn becomes highly questionable. Under such construction, self-insurers under subsection (b) would have four years of continuing percentage reduction in franchise and excise taxes which reductions would terminate at the end of the fourth year and self-insurers would revert back to full liability for franchise and excise taxes applicable to them after deducting the premium tax credit set forth in subsection (a). While such a construction is certainly possible when subsections (a) and (b) are considered in isolation of subsection (c), such result will not withstand critical analysis under the rules governing statutory construction.

On the other hand, the construction sought by the Commissioner, which is clearly evidenced by the legislative history, is simply to phase out franchise and excise taxes on insurance companies over a five-year period.

The "equal protection" constitutional questions asserted by Saturn are without merit. Justice Henry laid out for the Supreme Court the rules by which we are governed:

> The test to be applied has been set forth in numerous cases. The classification must rest upon a reasonable basis. If it has a reasonable basis, it is not unconstitutional merely because it results in some inequality. Reasonableness depends upon the facts of the case and no general rule can be formulated for its determination. *Estrin v. Moss*, 221 Tenn. 657, 430 S.W.2d 345 (1968); *Motlow v. State*, 125 Tenn. 547, 145 S.W. 177 (1912).

> The burden of showing that a classification is unreasonable and arbitrary is placed upon the individual challenging the statute; and if any state of facts can reasonably be conceived to justify the classification or if the reasonableness of the class is fairly debatable, the statute must be upheld. *Swain v. State*, 527 S.W.2d 119 (Tenn.1975); *Estrin, supra; Phillips v. State*, 202 Tenn. 402, 304 S.W.2d 614 (1957).

Before the classification will be held to violate the equal protection guaranty, it must be shown that it has no reasonable or natural relation to the legislative objective. *City of Chattanooga, supra; Phillips, supra*. In addition, the statute must apply alike to all who fall within, or can reasonably be brought within the classification. *Massachusetts Mutual Life Insurance Co. v. Vogue Inc.*, 54 Tenn.App. 624, 393 S.W.2d 164 (1965).

*Harrison v. Schrader*, 569 S.W.2d 822, 825-26 (Tenn.1978).

Saturn is a manufacturer of automobiles that chooses to be self-insured for workers' compensation purposes. An insurance company, on the other hand, is in the business, not of building automobiles but of selling insurance. Alleviating the effects of retaliatory taxation by other states to the disadvantage of Tennessee's domestic insurance companies standing alone is a sufficient basis to withstand equal protection scrutiny. That such was the primary motivating factor in the enactment of Chapter 508 of the Public Acts of 1997 is clearly disclosed by the legislative history of the act.

The judgment of the trial court is in all respects affirmed with costs assessed to Appellant. The case is remanded for such further proceedings as may be necessary.

_____
WILLIAM B. CAIN, JUDGE