IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 22, 2008 Session

# HIGH COUNTRY ADVENTURES, INC. v. POLK COUNTY

**Appeal from the Chancery Court for Polk County**
**No. 6924    Jerri Bryant, Chancellor**

---

**No. E2007-02678-COA-R3-CV - FILED NOVEMBER 10, 2008**

---

The issues in this case are whether operators of whitewater rafting ventures responsible for collecting a county privilege tax imposed upon consumers participating in commercial rafting ventures in Polk County have standing to challenge the tax and if so, whether the tax is invalid because it is preempted by federal law. Upon careful review of the record and applicable law, we conclude that the operators have standing to contest the legality of the privilege tax and that the tax is preempted by federal law and is, therefore, invalid.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part; Cause Remanded**

SHARON G. LEE, SP. J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Carl E. Hartley and Justin M. Sveadas, Chattanooga, Tennessee, for the appellant, High Country Adventures, Inc.

Christopher W. Conner, Maryville, Tennessee, for the appellants, Cripple Creek; Southeastern Expeditions; Nantahala Outdoor Center, Inc.; USA Raft, Inc.; Lamar Davis d/b/a Outland Expeditions; Ocoee Adventure Company, LLC; Ocoee Inn Rafting, Inc.; Wildwater Ltd.; Adventures Unlimited, Inc.

Denny E. Mobbs, and Ginger Wilson Buchanan, Cleveland, Tennessee, for Polk County, Tennessee.

## OPINION

### *I. Background*

The facts in this case are not in dispute. In 1981, the Tennessee legislature enacted a private act ("the 1981 Act") authorizing Polk County to levy a privilege tax on consumers participating in activities that included commercial whitewater rafting excursions in Polk County. As particularly pertinent to the present appeal, the 1981 Act included the following sections, beginning with Section 2, which stated:

> The legislative body of Polk County is hereby authorized to levy a privilege tax upon the privilege of a consumer paying consideration for admission for an amusement. Such tax shall be imposed on the consideration charged by the operator at a rate equivalent to the combined rate imposed by the state and Polk County under the "Retailers' Sales Tax Act" and the "1963 Local Option Revenue Act" pursuant to Tennessee Code Annotated, Title 67, Chapter 30, as the same may be amended and adopted. Such tax so imposed is a privilege tax upon the consumer enjoying the amusement and is to be collected and distributed as provided in this act.

The term "operator" as used in the 1981 Act was defined as ". . . the person operating an amusement," and the term "amusement" was further defined as follows:

> "amusement" means any ride, excursion, or float trip by canoe, raft, or similar floating device on a whitewater river where a fee is charged by any person for such ride, excursion, or float trip, which charge is otherwise not included as a taxable privilege under the "Retailers' Sales Tax Act" imposed by Tennessee Code Annotated, Title 67, Chapter 30.[1]

---

[1]The Retailers' Sales Tax Act provides that activities such as the whitewater rafting in this case shall be exempt from taxation as an amusement as follows:

> There is exempt from the sales tax on admission, dues or fees imposed by § 67-6-212:
> . . . Events or activities conducted upon rivers and waterways in this state whose continued use for recreational purposes is contingent upon revenue produced pursuant to agreements entered into between the State of Tennessee and the federal government, or an agency thereof, which agreements provide for the establishment of a trust fund for such purposes; provided, that this exemption shall prevail only if the annual distribution of funds to the state from such trust fund exceeds that amount of revenue to the state that would otherwise be produced if the amusement tax under the provisions of § 67-6-212 were impose on such events or activities, as determined by the fiscal review committee.

Tenn. Code Ann. § 67-6-330(a)(8).

2

As to collection of the tax from the consumer and remittance of such taxes to Polk County, the 1981 Act further provided at Section 3 that "[s]uch tax shall be added by each operator to the consideration charged for admission for such amusement, and shall be collected by such operator from the consumer and remitted by such operator to the county trustee. The tax shall not be assumed by the operator."

Finally, Section 9 of the 1981 Act provided as follows with respect to remedies for recovery of allegedly erroneous tax payments:

> Upon any claim of illegal assessment and collection, the operator liable for collecting and remitting the tax shall have the remedy provided in Tennessee Code Annotated, Title 67, Chapter 23 for recovery of erroneous tax payments, it being the intent of this act that the provisions of law which apply to the recovery of taxes illegally assessed and collected shall apply to the tax collected under the authority of this act; provided, the county trustee shall possess those powers and duties as provided in Tennessee Code Annotated, Section 67-2301, with respect to the adjustment and settlement with such operators of all errors of taxes collected by him under the authority of this act and direct the refunding of the same. Notice of any tax paid under protest shall be paid to the county trustee, and suit for recovery shall be brought against him.

Section 2 of the 1981 Act was amended in 1997 to delete the first sentence and substitute therefor: "The Legislative Body of Polk County is hereby authorized to levy a privilege tax upon the privilege of a consumer participating in an amusement for which an admission fee is charged."

In April of 2001, the legislature, again by private act, reenacted and restated the 1981 Act. This reenactment/restatement ("the 2001 Act") changed certain aspects of the 1981 Act. Of note, as relevant to matters in this opinion, Section 7 of the 2001 Act restated Section 9 of the 1981 Act, pertaining to remedies with respect to erroneous payments, as follows:

> Upon any claim of illegal assessment and collection, the operator liable for collecting and remitting the tax shall have the remedy provided in Tennessee Code Annotated, Title 67, Chapter 1, Part 9, for recovery of erroneous tax payments, it being the intent of this act that the provisions of law which apply to recovery of taxes illegally assessed and collected shall apply to the tax collected under the authority of this act; provided, the county trustee shall possess those powers and duties as provided in Tennessee Code Annotated, Section 67-1-707, with respect to the adjustment and settlement with such operators of all errors of taxes collected by him under the authority of this act and direct the refunding of the same. Notice of any tax paid

3

under protest shall be paid to the county trustee, and suit for recovery shall be brought against him.

By original complaint filed in the Polk County Chancery Court in November of 2001 and subsequent amendments to same, High Country Adventures, Inc. ("High Country"), a commercial whitewater rafting enterprise operating on the Ocoee River in Polk County, sued Polk County, seeking a refund of privilege taxes paid under protest under the 2001 Act in the total amount of $30,598.84 for the months of April through October 2001. As grounds for suit, High Country asserted, inter alia, that Polk County is barred from imposing the privilege tax upon sales of tickets by High Country outside of Polk County, or alternatively, outside of Tennessee, and that Polk County is barred from enforcing the tax because it is inconsistent with 33 U.S.C. § 5, which was amended by the Maritime Transportation Security Act of 2002 ("the MTSA") to prohibit counties and states from levying a tax, fee, or other imposition upon any vessel or other watercraft operating on any navigable waters subject to the authority of the United States. Separate complaints also requesting refund of taxes paid under protest upon these same two grounds were filed by the following additional businesses operating rafting ventures on the Ocoee River in Polk County ("the other Operators"): Adventures Unlimited, Inc.; Ocoee Inn Rafting, Inc.; Wildwater Ltd.; USA Raft, Inc.; Nantahala Outdoor Center, Inc.; Ocoee Adventures Company, L.L.C., d/b/a Ocoee Adventure Center; Lamar Davis., d/b/a Outland Expeditions; Southeastern Expeditions; and Cripple Creek.

On June 16, 2006, the trial court granted summary judgment in favor of High Country and the other Operators based upon the court's conclusion that the authority of Polk County to impose the privilege tax is confined to activities, including ticket sales, that occur within Polk County and the further conclusion that 11 U.S.C. § 5(b) as amended by the MTSA prohibited Polk County from imposing the subject privilege tax after 2002. Following entry of summary judgment, Polk County filed a motion to dismiss and/or in the alternative, a motion for judgment on the pleadings and later, a motion to alter or amend the judgment. As grounds for the latter motion, Polk County argued that High Country and the other rafting company Operators "are without standing to prosecute the claims asserted in their Petitions or Complaints and are without standing to attack the constitutionality or legality of the underlying privilege tax" and that, as a consequence, the trial court does not have subject matter jurisdiction. The trial court granted the motion on these grounds and thereafter, granted the motion to dismiss the complaints of High Country and the other Operators. High Country and the other Operators filed their notices of appeal of the trial court's decision, and, the issues being the same, all such appeals were consolidated as the matter now before us[2].

## II. Issues

We address the following issues:

---

[2]Given this consolidation of parties, reference to High Country in this opinion shall also constitute a reference to the other rafting business operators who also joined in this appeal, to wit, Cripple Creek; Southeastern Expeditions; Nantahala Outdoor Center, Inc.; USA Raft, Inc.; Lamar Davis d/b/a Outland Expeditions; Ocoee Adventure Co., L.L.C. d/b/a Ocoee Adventure Center; Ocoee Inn Rafting, Inc.; Wildwater Ltd.; and Adventures Unlimited, Inc.

1) Whether the trial court erred in granting Polk County's motion to alter or amend, and therefore, its motion to dismiss, upon grounds that High Country and the other rafting business operators lack standing to challenge the contested tax and that the trial court, therefore, lacks subject matter jurisdiction in the case.

2) Whether the trial court erred in granting High Country's motion for summary judgment upon the ground that 33 U.S.C. § 5 as amended by the MTSA preempted the subject Polk County privilege tax.

### III. Analysis

### A. Standard of Review

In this appeal, we review the trial court's grants of Polk County's motion to alter or amend and motion to dismiss, and High Country's motion for summary judgment according to the following respective standards.

First, a motion to alter or amend is reviewed under an abuse of discretion standard. ***Stovall v. Clarke***, 113 S.W.3d 715, 721 (Tenn. 2003). Under the abuse of discretion standard, a trial court ruling will not be disturbed if reasonable minds can disagree as to its propriety, and no abuse of discretion will be found unless the trial court applied an incorrect legal standard or reached a decision against logic or reasoning which causes an injustice to the party complaining. ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001). An abuse of discretion occurs when the lower court's decision is without a basis in law or fact and is, therefore, arbitrary, illogical, or unconscionable. ***State v. Brown & Williamson Tobacco Corp.***, 18 S.W.3d 186, 191 (Tenn. 2000).

The standard for reviewing a motion to dismiss under Tenn. R. Civ. P. 12 was restated by the Supreme Court as follows:

> In reviewing a motion to dismiss, the appellate court must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. Therefore, the factual allegations are taken as true, and our review is limited to the lower court's legal conclusions. These questions of law are reviewed de novo with no presumption that the lower court's conclusions are correct.

***Tigg v. Perelli Tire Corp.***, 232 S.W.3d 28, 31-32 (Tenn. 2007) (citations omitted).

Finally, summary judgments enable courts to conclude cases that can and should be resolved on dispositive legal issues. *See* ***Byrd v. Hall***, 847 S.W.2d 208, 210 (Tenn. 1993); ***Airport Props. Ltd. v. Gulf Coast Dev., Inc.,*** 900 S.W.2d 695, 697 (Tenn. Ct. App. 1995). They are appropriate only when the facts material to the dispositive legal issues are undisputed. Accordingly, they should not be used to resolve factual disputes or to determine the factual inferences that should be drawn

from the evidence when those inferences are in dispute. *See **Bellamy v. Fed. Express Corp.**,* 749 S.W.2d 31, 33 (Tenn. 1988).

Our task on appeal is to review the record to determine whether the requirements for granting summary judgment have been met. *See **Hunter v. Brown**,* 955 S.W.2d 49, 50-51 (Tenn. 1997); ***Aghili v. Saadatnejadi**,* 958 S.W.2d 784, 787 (Tenn. Ct. App. 1997). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see **Byrd***, 847 S.W.2d at 210; and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See **Anderson v. Standard Register Co.**,* 857 S.W.2d 555, 559 (Tenn. 1993). A party seeking a summary judgment must demonstrate the absence of any genuine and material factual issues. ***Byrd***, 847 S.W.2d at 214.

The Tennessee Supreme Court in ***Hannan v. Alltel Publishing Co.***, __ S.W.3d __ , No. E2006-01353-SC-R11-CV, 2008 WL 4755788 (Tenn., filed Oct. 31, 2008), has recently clarified the moving party's burden of proof in a summary judgment motion. A moving party who seeks to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. When the party seeking summary judgment has made a properly supported motion, the burden shifts to the non-moving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See **Byrd*** 847 S.W.2d at 215; ***Robinson v. Omer***, 952 S.W.2d 423, 426 (Tenn. 1997). The non-moving party may not simply rest upon the pleadings, but must offer proof by affidavits or other discovery materials (depositions, answers to interrogatories, and admissions on file) provided by Rule 56.06 showing that there is a genuine issue for trial. If the non-moving party does not so respond, then summary judgment, if appropriate, shall be entered against the non-moving party. Tenn. R. Civ. P. 56.06.

Summary judgments do not enjoy a presumption of correctness on appeal. *See **Nelson v. Martin**,* 958 S.W.2d 643, 646 (Tenn. 1997); ***City of Tullahoma v. Bedford County**,* 938 S.W.2d 408, 412 (Tenn. 1997). Accordingly, when we review a summary judgment, we view all the evidence in the light most favorable to the non-movant, and we resolve all factual inferences in the non-movant's favor. *See **Luther v. Compton**,* 5 S.W.3d 635, 639 (Tenn. 1999); ***Muhlheim v. Knox County Bd. of Educ.**,* 2 S.W.3d 927, 929 (Tenn. 1999). A summary judgment will be upheld only when the undisputed facts reasonably support one conclusion – that the moving party is entitled to a judgment as a matter of law. *See **White v. Lawrence**,* 975 S.W.2d 525, 529 (Tenn. 1998); ***McCall v. Wilder**,* 913 S.W.2d 150, 153 (Tenn. 1995).

### B. Standing and Subject Matter Jurisdiction

We begin with the question of whether the trial court erred in granting Polk County's motion to alter or amend and therefore, its motion to dismiss, upon grounds that High Country was without standing to assert the claims set forth in its complaint, and as a result, the trial court was without

subject matter jurisdiction.

In its October 26, 2007 order granting Polk County's motion to alter or amend, the trial court set forth the rationale for its determination with respect to the issues of standing and subject matter jurisdiction. In such order, the trial court observed that, as a general matter, administrative remedies exist to address questions of fact, while judicial remedies exist to address questions of law. The trial court maintained that under both the 1981 Act and its 2001 re-enactment, the legislature accorded rafting business operators, such as High Country, administrative standing to address and adjust only factual mistakes in the assessment and collection of the tax, but not standing to address the legality of the tax. This is evident, the trial court reasoned, from reading Tenn. Code Ann. § 67-1-701, cited in Section 7 of the 2001 Act, which authorizes county clerks to make administrative adjustments for taxes they have erroneously collected. The trial court stated that questions of law are subject to a judicial remedy provided by Tenn. Code Ann. § 67-1-901, which allows for the recovery of taxes paid under protest. However, the trial court noted, as dictated by Tennessee case law, this judicial remedy is only available to the "taxpayer" – the person upon whom the tax is imposed and who is, therefore, obligated to pay the tax. The trial court determines that because the privilege tax was not assessed against the rafting company operators, and they were not required to pay the taxes but only to collect the taxes, "they do not sustain any injury distinct and palpable from the general population with respect to the tax" and, therefore, do not have standing to prosecute a suit upon grounds that the tax is illegal.

Under ordinary circumstances, we agree with the trial court's conclusion that a party such as High Country would be without judicial standing. As noted, the privilege tax in this matter is not imposed upon the business operator but is, rather, a "tax upon *the consumer* enjoying the amusement." Further, it is well-settled at common law that "a non-taxpayer cannot maintain an action against a taxing authority for the recovery of taxes even though he may bear the economic burden of those taxes." *Beare Co. v. Olsen*, 711 S.W.2d 603, 605-06 (Tenn. 1986). However, as we have indicated on prior occasion, even where there is not standing at common law, standing may be created by an act of the legislature:

> In cases involving statutory causes of action, a party's standing may depend upon requirements contained in the statute creating the cause of action. If these requirements have been defined by statute, it is proper for the courts to conclude that the General Assembly has exercised its constitutional prerogative to determine the conditions under which a party will be permitted access to the courts. Thus, courts should defer to legislative standing criteria contained in statutes creating new causes of action.

*City of New Johnsonville v. Handley*, No. M2003-00549-COA-R3-CV, 2005 WL 1981810 at *15 n. 23 (Tenn. Ct. App. M.S., filed Aug. 16, 2005).

It is our opinion that High Country does have judicial standing in this matter as a

7

consequence of specific legislative mandate. In this regard, we note a portion of the second paragraph of Section 7 of the 2001 Private Act, which states as follows:

> Upon any claim of illegal assessment and collection, the operator liable for collecting and remitting the tax shall have the remedy provided in Tennessee Code Annotated, Title 67, Chapter 1, Part 9, for recovery of erroneous tax payments, it being the intent of this act that the provisions of law which apply to recovery of taxes illegally assessed and collected shall apply to the tax collected under the authority of this act . . . ."

It is a well-settled rule that enactments of the General Assembly are to be construed as written so as to give effect to the purpose of the enactment. *Auto Credit of Nashville v. Wimmer*, 231 S.W.3d 896, 900 (Tenn. 2007). The natural and ordinary meaning of the language in this portion of the 2001 Act gives High Country judicial standing to pursue its claims against Polk County because as an "operator" as defined by the Act, it is claiming that the taxes in question were illegally assessed, and it is allowed the remedies set forth at Tenn. Code Ann. § 67-1-901, et seq. without exception. We discern the nature of such remedies to include legal, as opposed to merely administrative remedies, upon our review of both Tenn. Code § 67-1-901(a) and § 67-1-912 which respectively provide as follows:

> In all cases where not otherwise provided in which an officer, charged by law with the collection of revenue due the state, shall institute any proceeding, or take any steps for the collection of the sum alleged or claimed to be due by the officer from any citizen, *the person against whom the proceeding or step is taken shall, if that person conceives the same to be* unjust or *illegal, or against any statute, or clause of the constitution of the state,* pay the revenue under protest.

Tenn. Code Ann. § 67-1-901(a) (emphasis added).

> (a) The provisions of §§ 67-1-901– 67-1-905 and 67-1-908 – 67-1-910 apply to the recovery of all taxes collected by any of the counties of this state.
> (b)(1) The county officer collecting any county taxes paid under protest shall pay such revenue into the county treasury and, at the time of payment, shall give notice to the county mayor and board of commissioners, or other governing body of a county, that the same were paid under protest.
> (2) *If it be finally determined by any court having jurisdiction of any suit brought within six (6) months after such payment under protest against the county to recover such taxes that the same were wrongfully collected*, as not being due from a party to the county, the

8

county shall refund such taxes with such interest as the court may determine to be proper, not exceeding the legal rate, and shall pay costs of the cause.

Tenn. Code Ann. § 67-1-912 (emphasis added). The emphasized language in Tenn. Code Ann. § 67-1-901 clearly contemplates that a party contesting taxes may do so on the basis of illegality and unconstitutionality, and § 67-1-912 further contemplates that such contest will be ruled upon by the trial court, which will also determine the proper amount of any refunds due the complainant.

In support of its argument that only a taxpayer has standing to recover taxes such as the privilege taxes paid by High Country, Polk County relies upon *Admiralty Suites & Inns, LLC v. Shelby Co.*, 138 S.W.3d 233 (Tenn. Ct. App. 2003); *Brodbine*, *v. Torrence*, 545 S.W.2d 743 (Tenn. 1977); and *Ashworth v. Greene Co.*, No. E2002-0050-COA-R3-CV, 2003 WL 288430 (Tenn. Ct. App. E.S., filed Feb. 10, 2003), the latter two cases being also cited by the trial court in its order granting Polk County's motion to alter or amend. However, none of these cases involved legislation granting standing to a party other than the taxpayer and therefore, we do not find them to be controlling in the present context.

In support of its argument that High Country has only administrative standing to contest the taxes in question, Polk County also relies on *Fentress County Bank v. Holt*, 535 S.W.2d 854 (Tenn. 1976) wherein the Tennessee Supreme Court held that "a taxpayer has two remedies for the recovery of county taxes, viz: (1) the administrative procedure provided under Section 67-2301, T.C.A. and (2) payment under protest and a common law suit for recovery." *Id.* at 855, citing *Holloway v. Putnam County*, 534 S.W.2d 292 (Tenn. 1976). Polk County argues that given this holding, "the remedy provided to the rafting operators under Section 9 of the Private Act of 1981 (and Section 7 of the Private Act of 2001), confers only an administrative remedy related to questions of fact pertaining to erroneous assessments or collections as between the rafting operator, as tax collector, and the county trustee. Section 9 of the Private Act provides an administrative remedy to the rafting operators, but does not confer standing on the rafting operator as a taxpayer to contest the legality or constitutionality of the Private Act." We do not agree.

Tennessee Code Annotated § 67-2301 was subsequently codified as § 67-1-707 and provides in pertinent part as follows:

> (a) The county clerks of the various counties are also authorized and empowered to settle and adjust with taxpayers all errors and double assessments of county taxes erroneously or illegally collected by them and to direct the refunding of the taxes. Any claim for such refund by the county of taxes or revenue alleged to have been erroneously or illegally paid shall be filed with the county clerk, supported by proper proof within one (1) year from the date of payment; otherwise, the taxpayer shall not be entitled to a refund and the claim for refund shall be barred.

9

Tenn. Code Ann. § 67-1-707(a). While we agree that the remedy provided by this section is an administrative remedy that was given High Country under Section 7 of the 2001 Act, we do not agree that it was the *only* remedy given High Country under that act, which, as we have stated, also includes a grant of remedy under Tenn. Code Ann. § 67-1-901, et seq., including the right to have a court decide legal issues such as those raised in the instant matter. As recognized by the high court in *Holloway*, the remedy under § 67-1-707 "provides an unacceptable remedy for a taxpayer whose taxes are tainted with the illegality of wrongful assessments or any form of invalidity which may not be processed on an administrative basis." *Holloway*, at 294-95; *see also* *Hertz Corp. v. Co. of Shelby*, 667 S.W.2d 66, 69 (Tenn. 1984).

Aside from what we construe to be the clear language of the subject legislation, we also find support for a grant of judicial standing to High Country under the Tennessee Supreme Court's opinion in *Austin Co. v. Woods*, 620 S.W.2d 73 (Tenn. 1981). In that case, a chemical manufacturer entered into a contract with its general contractor to build the manufacturer's new plant and to procure required materials from suppliers, with such suppliers to be paid by check from the contractor's bank account which was funded by the manufacturer. The contractor, also pursuant to its contract with the manufacturer, paid sales and use taxes for two years based upon the cost of purchase and installation of items of personal property purchased for the manufacturer. After the building project was completed, the Commissioner of Revenue assessed the contractor an additional amount for sales and use taxes for the two years, plus penalty and interest. The manufacturer paid the assessed amount under protest. The Commissioner argued that the manufacturer did not have standing under Tenn. Code Ann. § 67-2303, now Tenn. Code Ann. § 67-1-901. As noted, this statute provides for payment of the tax under protest by the person against whom steps or proceedings are taken to collect a tax such person "conceives to be unjust or illegal, or against any statute or clause of the Constitution of the state." The Commissioner contended that the manufacturer was without standing because the assessment was against the contractor, not the manufacturer, and therefore, the manufacturer was not "the person against whom the proceeding or step (was) taken" as designated under the statute. The Supreme Court disagreed, concluding that the manufacturer had standing to contest the tax because it paid the tax pursuant to its contractual obligation and was, therefore, subrogated to the remedies of the assessed contractor. The Commissioner relied upon the previously noted case of *Brodbine v. Torrence,* wherein the Court had denied standing to liquor retailers who had attempted to challenge a tax on liquor wholesalers. The Court distinguished *Brodbine* upon the fact that the retailers in that case had claimed standing upon the argument that they bore the economic burden of the tax as it was passed on to them, but that they did not pay the tax and "[t]hey had no express liability for tax either by statute (or ordinance) or contract." *Id.* at 75.

Like the manufacturer in *Austin* and unlike the plaintiffs in *Brodbine*, High Country has express liability for the privilege tax that Polk County seeks. This liability derives from the taxing legislation itself. Although the legislation does not impose the tax on High Country, just as the manufacturer in Austin was not the assessed party, the legislation does make High Country expressly liable for the tax, providing as follows at Section 5, that the operator, not the consumer, shall be penalized if the tax is not timely paid to the county trustee:

10

Taxes due by an operator which are not remitted to the county trustee on or before the due dates as provided in this act are delinquent. When an operator fails to remit the tax due, or any portion thereof, required by this act on or before such due date, there shall be imposed a specific penalty, to be added to the amount of the tax which is delinquent, in the amount of five percent (5%), if the failure is not more than thirty (30) days, with an additional five percent (5%) for each additional thirty (30) days or fraction thereof, during which the failure continues, not to exceed twenty-five percent (25%) in the aggregate. Provided, however, where a return is delinquent at the time it is filed or becomes delinquent, the minimum penalty may be five dollars ($5.00) regardless of the amount of tax due or whether there is any tax due. When an operator fails to remit such tax due, or any portion thereof on or before such due date, there shall be added to the amount due interest at the rate of twelve percent (12%) per annum from such date due until paid. Such interest and penalty shall become a part of the tax required to be remitted.

It is a violation of this act for an operator to willfully fail or refuse to collect or remit the tax imposed by this act. Such willful failure or refusal shall subject the operator to a fine not to exceed fifty dollars ($50.00). The fine levied herein shall be applicable to each individual transaction involving an amusement taxable by this act when such operator willfully fails or refuses to collect or remit the tax payable to the county trustee.

Although the Polk County privilege tax is not specifically imposed upon High Country, Polk County looks to High Country for its payment and express liability for nonpayment of the tax to the county trustee falls upon High Country and not the consumers upon whom the tax is imposed. Therefore, we believe that High Country is subrogated to whatever remedy the consumer taxpayer would have, just as the manufacturer was subrogated to the rights and remedies of the contractor in *Austin.*

Based upon the foregoing analysis, we hold that High Country does have standing to pursue its claims in this case, and therefore, the trial court does have subject matter jurisdiction to hear such claims. Accordingly, it is our determination that the trial court abused its discretion in granting Polk County's motion to alter or amend its prior summary judgment, and it is our further determination that the trial court erred in granting Polk County's motion to dismiss.

### C. Maritime Transportation Security Act

Having resolved the standing issue, we now consider whether the trial court properly granted High Country summary judgment upon the ground that the county privilege tax was preempted by 33 U.S.C. § 5(b), which as amended by the MTSA, provides as follows:

11

(b) No taxes, tolls, operating charges, fees, or any other impositions whatever shall be levied upon or collected from any vessel or other water craft, or from its passengers or crew, by any non-Federal interest, if the vessel or water craft is operating on any navigable waters subject to the authority of the United States, or under the right to freedom of navigation of those waters, except for

(1) fees charged under Section 2236[3] of this title; or

(2) reasonable fees charged on a fair and equitable basis that -

  (A) are used solely to pay the cost of a service to the vessel or water craft;

  (B) enhances the safety and efficiency of interstate and foreign commerce; and

  (C) do not impose more than a small burden on interstate or foreign commerce; or

(3) property taxes on vessels or watercraft, other than vessels or watercraft that are primarily engaged in foreign commerce if those taxes are permissible under the United States Constitution.

The trial court's order granting High Country summary judgment stated that, based upon admissions by Polk County and a plain reading of the MTSA, Polk County's privilege tax levied after the November 2002 effective date of the MTSA did not meet any of the exceptions delineated under the MTSA and therefore, the levy of the privilege tax after that date violated the MTSA and the taxes paid under protest after that date should be refunded. Specifically, the trial court found that while Polk County denied that the MTSA covers the Ocoee River, it admitted that the tax was not used solely to pay the cost of a service to a vessel or water craft on the Ocoee River, "that the Ocoee River meets the technical legal requirements to be classified as a navigable waterway, subject to the authority of the United States for certain purposes," and "that rafts are vessels or other water craft as used within the [MTSA]."

Polk County presents two arguments in urging us to vacate the trial court's grant of summary judgment. First, Polk County notes its denial that Ocoee River is a navigable waterway covered by the MTSA and denies that rafts are vessels or water craft as those terms are used in 11 U.S.C. § 5(b). Given these denials and the fact that the terms "navigable waters," "vessel," or "watercraft" are not defined as implemented in 33 U.S.C. § 5(b), Polk County contends that it is unclear, and should not be implied, that Congress intended to preempt the existing local privilege tax. Second, Polk County argues that the MTSA does not contain express language preempting a non-federal tax already in effect. We do not find merit in either of these arguments.

As to Polk County's argument based upon the MTSA's failure to specifically define the terms in question, we note the following courtroom statements of Polk County's attorney and Polk County's response to request for admissions related to the definitions of such terms. First, Polk

---

[3]The Water Resources Development Act of 1986.

County's attorney's statements in court in this regard were as follows:

> Polk County has taken the position . . . that the Ocoee River is a navigable water of the United States for certain purposes, but not for the purpose of this statute. The evidence that Mr. Conner alluded to is an affidavit from a manager of the Corps of Army Engineers that says the river is designated as a navigable waterway from its mouth up at the Ocoee River on the border to its link where it has the confluence with the Hiwassee River.
>
> So for TVA purposes or Corps of Army Engineer purposes, Polk County cannot contest that it's a navigable waterway of the United States. What Polk County's saying is for the purpose of this statute, it is not a navigable water of the United States.
>
> . . .
>
> Submit that Congress never intended for this statute to extend from New Orleans to the tributaries of the Ocoee River as they flow into the Hiwasee, the Tennessee, the Ohio, and the Mississippi. It cannot quarrel with an argument that a raft taking somebody down a rapids is a watercraft or a vessel. I think it is.
>
> I think a vessel or a watercraft is anything that is made by a human being to help carry somebody over water or cargo, so I have to admit it's watercraft, the raft, even if it doesn't have a motor on it; but there's no definition in this statute about what's a vessel or what's a watercraft as well as a navigable waterway.

Further, Polk County's response to requests for admissions included the following:

> REQUEST NO. 1: Admit that the Ocoee River in Polk County is a navigable waterway as it applies to 33 U.S.C. Section 5.
>
> RESPONSE: Polk County admits the Ocoee River meets the technical legal requirements to be classified as a navigable waterway, subject to the authority of the United States for certain purposes. Polk County denies that the Ocoee River is a navigable waterway as it applies to 33 U.S.C. Section 5.

In its brief, Polk County asserts that it "admitted that a raft is a watercraft but not as defined in the federal statute" and that "the Ocoee River [is] a navigable waterway for certain purposes but not covered by the statute." However, Polk County presents us with no argument as to what

alternative definition Congress intended that these two terms carry under the federal law. Further, Polk County presents no argument as to why the Corps of Engineers' and TVA's definition of "navigable waterway" and its own definition of "watercraft" would not be the appropriate definitions of these terms for purposes of the Maritime Act. Accordingly, we are presented with no basis for rejecting the trial court's conclusion that the definitions of the terms admitted to by Polk County are in fact the definition of the terms intended by Congress for purposes of the MTSA. It is a well-settled rule of statutory construction that "[l]egislative intent and purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language." *Saturn Corp. v. Johnson*, 197 S.W.3d 273, 278 (Tenn. 2006); *Tuggle v. Allright Parking Sys., Inc.*, 922 S.W.2d 105, 107 (Tenn. 1996). We believe the definitions admitted by Polk County constitute the natural and ordinary meaning of the terms "navigable waterway" and "watercraft" and Polk County has failed to support an argument to the contrary.

We now address Polk County's argument that 33 U.S.C. § 5(b) as amended by the MTSA does not apply to prohibit local legislation already in effect. We begin with the Supremacy Clause of the United States Constitution which provides that state legislation shall be subordinate to federal law, stating as follows:

> This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding.

U.S. Const. art. VI, § 1, cl. 2. Addressing the meaning of the Supremacy Clause in *Perez v. Campbell*, 402 U.S. 637 (1971), the United States Supreme Court expounded as follows:

> As early as *Gibbons v. Ogden*, 9 Wheat. 1, 6 L.Ed. 23 (1824), Chief Justice Marshall stated the governing principle – that "acts of the State Legislatures * * * (which) interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution," are invalid under the Supremacy Clause. *Id.*, at 211. . . . Three decades ago Mr. Justice Black, after reviewing the precedents, wrote in a similar vein that, while "(t)his Court, in considering the validity of state laws in the light of treaties or federal laws touching the same subject, ha(d) made use of the following expressions: conflicting; contrary to; occupying the field; repugnance; difference; irreconcilability; inconsistency; violation; curtailment; and interference (,) * * * (i)n the final analysis, our function is to determine whether a challenged state statute stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v.*

14

***Davidowitz***, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

***Id.*** at 649. Further, in ***Barnett Bank of Marion Co., N.A. v. Nelson***, 517 U.S. 25, 32-33 (1996) the United States Supreme Court noted appropriate considerations with respect to determining the pre-emption question in those cases where the federal statute does not contain language showing that Congress explicitly intended to preempt state law:

> Sometimes courts, when facing the pre-emption question, find language in the federal statute that reveals an explicit congressional intent to pre-empt state law. More often, explicit pre-emption language does not appear, or does not directly answer the question. In that event, courts must consider whether the federal statute's "structure and purpose," or nonspecific statutory language, nonetheless reveal a clear, but implicit, pre-emptive intent. A federal statute, for example, may create a scheme of federal regulation "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Alternatively, federal law may be in "irreconcilable conflict" with state law. Compliance with both statutes, for example, may be a physical impossibility.*

***Id.*** at 31 (emphasis added) (citations omitted).

It is beyond dispute that there is a manifest conflict between Polk County's local privilege tax which levies a tax on a consumer participating in rafting excursions on navigable waters in the county and requires collection of the tax by the operator of such excursion, and 11 USC § 5(b), which prohibits the levying and collection of a tax from any vessel or water craft operating on any navigable waters subject to the authority of the United States or from its passengers or crew. The conflict is "irreconcilable," and compliance with both laws is "a physical impossibility."

In support of its argument that 11 U.S.C. § 5(b) should not be applied to prohibit preceding local laws, Polk County cites wherein the court noted that "[c]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law [and] in the absence of express preemptive language, federal courts should be reluctant to infer pre-emption." ***United States v. Veasquez-Alvarez***, 176 F.3d 1294, 1297 (10th Cir. 1999) (citations omitted). While we recognize these tenets, we believe that the obvious and inescapable conflict between the local tax and the federal prohibition overcomes the assumption against premption. Further, we find nothing in the federal legislation that shows it to be a prohibition of prospective state legislation only, and we find no reasonable basis for construing it to be so limited.

In summary, we find Polk County's well-presented arguments for reversal of the trial court's grant of summary judgment to be unpersuasive.

### *D. Disposition of Taxes Erroneously Collected*

The taxes at issue in this case were imposed upon, and collected from, a multitude of unknown consumers, and any refunds of monies due as a result of our decision belong to these consumers, not High Country and the other Operators. Accordingly, we direct that all such refund amounts be held by Polk County pending claim by any of those consumers to which they belong and that, if unclaimed after one year, any such amounts shall be assumed abandoned in accordance with Tenn. Code Ann. § 66-29-110[4] and shall be paid to the state treasurer for disposition in accordance with Tenn. Code Ann. §§ 66-29-115 and 66-29-121.

### IV. Conclusion

For the foregoing reasons, the trial court's summary judgment in favor of High Country is affirmed, and the trial court's orders granting Polk County's motion to alter or amend such summary judgment and motion to dismiss are reversed. Costs of appeal are assessed to Polk County, for which execution may issue if necessary.

_____
SHARON G. LEE, SPECIAL JUDGE

---

[4]Tennessee Code Annotated § 66-29-110 provides in pertinent part that "[a]ll property held for the owner by . . . a political subdivision . . . that has remained unclaimed by the owner for more than one (1) year is presumed abandoned, except property in the custody or control of any state or federal court in any pending action."